IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DANA Y. COWARD,                    )
                                   )      2:11-cv-03378-GEB-DAD
                Plaintiff,         )
                                   )
        v.                         )      ORDER
                                   )
JP MORGAN CHASE BANK, NATIONAL     )
ASSOCIATION, and DOES 1-20,        )
                                   )
                Defendants.        )
_____)

        Defendant seeks dismissal of Plaintiff's First Amended
Complaint ("FAC"), arguing, *inter alia*, "Plaintiff failed to disclose
any of her claims here as assets in her bankruptcy petition, and she
thereby lacks standing." (Def.'s Mot. 16:3-4.) Plaintiff opposes the
motion; however, Plaintiff construes Defendant's standing argument as a
judicial estoppel argument, countering as follows: "Plaintiff is not
taking a position inconsistent with an earlier position. At the time of
her bankruptcy there was no lawsuit to list on bankruptcy schedules. Ms.
Coward had no idea she would be filing a lawsuit against Chase." (Pl.'s
Opp'n 9:5-7.)

        "A plaintiff has the burden of establishing the elements

required for standing, and 'for purposes of ruling on a motion to dismiss for want of standing, . . . the trial . . . court[] must accept as true all material allegations of the complaint, and must construe the complaint in the favor of the complaining party.'" Takhar v. Kessler, 76 F.3d 995, 1000 (9th Cir. 1996) (quoting Warth v. Seldin, 422 U.S. 490, 501 (1975)). However, this tenet "is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Further, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007)).

"[D]ebtor standing is ordinarily prudential . . . ." Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co., 219 F.3d 895, 901 n.3 (9th Cir. 2000) (citing Sierra Switchboard Co. v. Westinghouse Elec. Corp., 789 F.2d 705, 708 n.1 (9th Cir. 1986)). "[T]he prudential doctrine of standing has come to encompass several judicially self-imposed limits on the exercise of federal jurisdiction. Principles of prudential standing are not ordained by the Constitution, but constitute rather rules of practice, albeit weighty ones." Id. at 899 (internal quotation marks and citations omitted). Therefore, "prudential standing [is] not a requirement of jurisdiction." Hilton v. Hallmark Cards, 599 F.3d 894, 904 n.6 (9th Cir. 2010).

"For [Plaintiff] to have standing, [she], rather than the bankruptcy estate, must own the claim upon which [she] is suing." Cusano v. Klein, 264 F.3d 936, 945 (9th Cir. 2001). "An 'estate' is created when a bankruptcy petition is filed. Property of a bankruptcy estate includes 'all legal or equitable interests of the debtor in property as

of the commencement of the case.' . . . [A]ssets of the estate properly included any of [a debtor's] causes of action." Id. (internal citations omitted); see also Engram v. Manera, 348 F. App'x 305, 306 (9th Cir. 2009) (applying this principle to Chapter 7 bankruptcy proceedings). Further, "[c]auses of action are separate assets which must be formally listed. Simply listing the underlying asset out of which the cause of action arises is not sufficient." Cusano, 264 F.3d at 947 (internal citations omitted).

"The bankruptcy code place[s] an affirmative duty on [a debtor] to schedule his assets and liabilities. If he failed to properly schedule an asset, including a cause of action, that asset continues to belong to the bankruptcy estate and [does] not revert to [the debtor]." Id. at 945-46 (internal citations omitted). Once claims belong to the bankruptcy estate, "[t]he plaintiff-debtor has no standing to bring [them] unless he can show that the claims were (1) exempt from the bankruptcy estate or (2) abandoned by the bankruptcy trustee. If neither apply, the claims belong to the bankruptcy estate and in turn must be asserted by the bankruptcy trustee rather than the debtor." Rowland v. Novus Fin. Corp., 949 F. Supp. 1447, 1453 (D. Haw. 1996); see also Fresno Rock Taco LLC v. Rodriguez, No. 1:11-cv-00622, 2011 WL 5240444, at *3 (E.D. Cal. Nov. 1, 2011) ("To prove [the bankruptcy estate does not own Plaintiffs' claims], Plaintiffs must show that the cause of action is either exempt from the bankruptcy proceedings, or was abandoned by the Trustee.").

A cause of action is exempt from the proceedings if it accrues after a debtor files for bankruptcy since "generally, a debtor has no duty to schedule a cause of action that did not accrue prior to bankruptcy." Cusano, 264 F.3d at 947 (internal citations omitted); see

also <u>In re Adair</u>, 253 B.R. 85, 90 (9th Cir. 2000) ("The Bankruptcy Code and Rules require that a debtor supplement the information in his or her schedules only in limited circumstances."). "To determine when a cause of action accrues, we look to state law." <u>Cusano</u>, 264 F.3d at 947 (internal citations omitted). Under California law, "[t]he general rule for defining the accrual of a cause of action sets the date as the time when, under substantive law, the wrongful act is done, or the wrongful result occurs, and the consequent liability arises. . . . In other words, it sets the date as the time when the cause of action is complete with all of its elements." <u>Investors Equity Life Holding Co. v. Schmidt</u>, 195 Cal. App. 4th 1519, 1531 (2011) (internal quotation marks and citations omitted).

Plaintiff and her husband filed a Chapter 7 bankruptcy petition on December 17, 2009; the claims alleged against Defendant in this action were not included in the schedules of assets. (Def.'s Req. for Judicial Notice Ex. B.)[1] Defendant argues as follows concerning its assertion that Plaintiff lacks standing:

> [P]laintiff's loan was originated in October 2005, and she alleges she was denied a permanent

---

[1] Defendant includes in its motion its Request for Judicial Notice. (ECF No. 16.) "As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks and citation omitted). However, a court may consider matters properly subject to judicial notice. <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 763 (9th Cir. 2007). A matter may be judicially noticed if it is either "generally known within the territorial jurisdiction of the trial court" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Since Plaintiff's Chapter 7 bankruptcy petition is capable of accurate and ready determination, it is judicially noticed. <u>See Johnson v. Bank United</u>, No. 2:10-cv-02567, 2011 WL 4829404, at *1 (E.D. Cal. Oct. 11, 2011) (taking judicial notice of a plaintiff's Chapter 13 bankruptcy petition).

1 |        modification in August 2009. Plaintiff was well
       |        aware of the facts underlying the claims she seeks
2 |        to assert in this action before she filed her first
       |        bankruptcy petition on December 17, 2009.
3 |

4 | (Def.'s Mot. 17:20-23.) Plaintiff counters that "there is no judicial

5 | estoppel in this case." (Pl.'s Opp'n 9:11.)

6 |        Plaintiff alleges the following facts in support of each of

7 | her claims:

8 |        In October 2005, Plaintiff and her husband Ronnie
       |        L. Coward entered in to a mortgage agreement with
9 |        Long Beach Mortgage Company (hereafter "LBMC"), a
       |        subsidiary of Washington Mutual (hereafter "WAMU").
10 |       LBMC was one of the leading wholesalers of subprime
       |        mortgages at the time, and is now out of business.
11 |

12 |       At the time of the loan, and at all relevant times
       |        thereafter, LBMC, WAMU, and CHASE representatives
       |        made numerous misrepresentations regarding the
13 |       terms of the loan. One of the many representations
       |        that was particularly egregious and continued to be
14 |       perpetrated until after foreclosure was the
       |        misrepresentation that the loan documents would be
15 |       fully executed and valid without the signature of
       |        Mr. Coward. This representation was made despite
16 |       the fact that Mr. Coward's income and guarantee was
       |        required for the mortgage to be approved, and
17 |       despite the fact that a signature line for Mr.
       |        Coward appeared on all necessary pages of the loan
18 |       documents. At the time the loan documents were
       |        signed,  Mr. Coward was overseas in the military
19 |       and unavailable.

20 |       . . .

21 |       In 2007, Plaintiff met WAMU/CHASE representative
       |        Patty Lepe at a foreclosure seminar. Plaintiff
22 |       applied for loan modification and provided Ms. Lepe
       |        with all necessary documentation including
23 |       documentation showing that because Mr. Coward had
       |        been injured, the total monthly household income
24 |       was $1500. After reviewing Plaintiff's application,
       |        WAMU and Plaintiff entered in to a written
25 |       modification agreement where Plaintiff's monthly
       |        payment would total $1579. However, when Plaintiff
26 |       went to make her first payment, the monthly payment
       |        amount was increased to $1988. As Plaintiff was on
27 |       a fixed household income of $1500/month, she
       |        disputed this amount with Ms. Lepe, and Ms. Lepe
28 |       assured Plaintiff that she would correct the
       |        "error" and that Plaintiff's monthly payments would

be $1579. However, despite WAMU/CHASE representatives' repeated assurances, Plaintiff's payments were never reduced to $1579 as required under the initial modification agreement.

In 2008 and 2009, Plaintiff applied to CHASE to have her loan re-modified. In fact, Plaintiff submitted numerous applications at the request of CHASE. Apparently, some of the applications were reviewed under CHASE guidelines and some were reviewed under newly enacted HAMP guidelines. Over these months, unbelievably, Plaintiff submitted 18 loan modification applications at CHASE's request.

Plaintiff was repeatedly assured by CHASE representatives that she qualified for loan modification. She was repeatedly told that she qualified under both CHASE guidelines and later under HAMP guidelines. CHASE representatives encouraged her to apply for HAMP modification, and requested re-application numerous times in 2009.

. . .

Finally, Plaintiff was approved for a new trial modification under HAMP. For reasons unknown to Plaintiff, the trial modification required monthly payments of $2045, which higher than previously agreed, and not a reduction in payments as required by HAMP. The agreement was memorialized by memorandum, and Plaintiff made her three monthly payments as required. Plaintiff performed her obligations under the agreement.

Shortly thereafter, Plaintiff received a denial of her application based on the allegation that she did not proved the property to be her primary residence. . . . Plaintiff alleges that CHASE knew the reason for denial was false, and made without justification or investigation.

. . .

In and after 2007 and to date, Plaintiff has repeatedly informed Defendant CHASE (and previously WAMU) that her husband was, and is, a military contractor working for the United States military and the Iraqi government to rebuild Iraq. Plaintiff has also repeatedly informed CHASE that her husband, and therefore her, qualify for assistance under the SCRA.

CHASE has violated the SCRA by refusing to acknowledge this information, by refusing to evaluate her husband's status under SCRA, and by refusing to offer assistance to Plaintiff and her

1  |  husband regarding their delinquent mortgage and
2  |  resulting foreclosure.

3  (FAC ¶¶ 8-17.) The essence of Plaintiff's allegations concern misconduct
4  occurring at the time of the origination of the loan and in conjunction
5  with the denial of Plaintiff's loan modification applications, both of
6  which occurred prior to the Chapter 7 bankruptcy petition. Plaintiff's
7  allegations concerning misconduct occurring after the bankruptcy
8  petition are insufficient to support any of Plaintiff's claims.

9  "[O]ne important exception to the general rule of accrual is
10 the discovery rule, which postpones accrual of a cause of action until
11 the plaintiff discovers, or has reason to discover, the cause of action.
12 That occurs when a plaintiff has reason to discover a cause of action
13 which is when he or she has reason at least to suspect a factual basis
14 for its elements." Investors Equity Life Holding Co., 195 Cal. App. 4th
15 at 1532 (internal quotation marks and citations omitted). "In order to
16 rely on the discovery rule for delayed accrual of a cause of action, a
17 plaintiff . . . must specifically plead facts to show (1) the time and
18 manner of discovery *and* (2) the inability to have made earlier discovery
19 despite reasonable diligence." Fox v. Ethicon Endo-Surgery, Inc., 35
20 Cal. 4th 797, 808 (2005) (internal quotation marks omitted). "In
21 assessing the sufficiency of the allegations of delayed discovery, the
22 court places the burden on the plaintiff to show diligence; conclusory
23 allegations [are insufficient to] withstand [a dismissal motion]." Id.
24 (internal quotation marks omitted).

25 Plaintiff alleges delayed discovery concerning each of her
26 claims as follows:

27 |  Any applicable statutes of limitation have been
   |  tolled by Defendants' continuing, knowing, and
28 |  active concealment of the facts alleged herein. By
   |  virtue of Defendants' concealment and

1       misrepresentations to Plaintiff, Plaintiff could
      not and did not discover Defendants' actions.
2

3       In the alternative, Defendants' should be stopped
      from relying on any statutes of limitation.
4       Defendants' owed Plaintiff an affirmative duty of
      full and fair disclosure, but knowingly failed to
5       honor and discharge such duty. Finally, prosecution
      of Defendants' conduct is not barred by any
6       statutes of limitations because Defendants' conduct
      constitutes an ongoing violation of Plaintiff's
7       rights, which continues to the present.

8 (FAC ¶¶ 5-6.) Plaintiff also makes delayed discovery allegations

9 specific to the alleged forgery:

10       Then, when Ms. Coward received foreclosure
      documents from Defendant CHASE in the summer of
11       2010, she discovered that the loan documents had
      been forged to include her husband's signature.
12

13       . . .

      Plaintiff's home was foreclosed by CHASE in August
14       2010.

15       . . .

16       In fact, it was not until 2010 that Plaintiff
      discovered that a CHASE representative or a
17       representative for an agent of CHASE, had forged
      the signature of Mr. Coward on all necessary pages
18       of the loan documents in an attempt to conceal the
      fact that these misrepresentations have been made.
19       The misrepresentation was material, and the
      concealment serves to toll the applicable statute
20       of limitations.

21 Id. ¶¶ 10, 18, 58. These allegations are insufficient to show delayed

22 discovery.

23       Therefore, since Plaintiff has not shown she has standing to

24 bring the subject claims, Defendant's dismissal motion is GRANTED.

25 Plaintiff is granted fourteen (14) days from the date on which this

26 order is filed to file a Second Amended Complaint addressing the

27 deficiencies in her First Amended Complaint.

28       Plaintiff is warned that a dismissal with prejudice could be

entered under Federal Rule of Civil Procedure 41(b) if Plaintiff fails
to file an amended complaint within the prescribed time period.

Dated:  April 27, 2012

GARLAND E. BURRELL, JR.
United States District Judge