IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DANA Y. COWARD,

    Plaintiff,                                            No. 2:11-cv-3378 GEB AC PS

    vs.

JP MORGAN CHASE BANK,

    Defendant.                                            FINDINGS & RECOMMENDATIONS
_____/

    On February 13, 2013, the court held a hearing on defendant JPMorgan Chase Bank's ("Chase") October 19, 2012 motion to dismiss (ECF No. 51). Dana Coward appeared in pro per. Michael Stusiak appeared for defendant Chase. On review of the motion, the documents filed in support and opposition, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

A.    <u>Allegations in Third Amended Complaint</u>

    In October 2005, plaintiff and her husband Ronnie L. Coward, not a party to this action, entered into a residential mortgage agreement with Long Beach Mortgage Company ("LBMC"), a subsidiary of Washington Mutual ("WaMu"), secured by real property located at

1

4828 Vogelsang Dr., Sacramento, CA 95842 ("the Subject Property")[1]. Compl. (ECF No. 41) ¶ 7. Plaintiff contends that WaMu representatives repeatedly represented that the mortgage agreement would be valid without Mr. Coward's signature despite the fact that Mr. Coward's income and guarantee were necessary for the mortgage approval, and further despite the fact that a signature line had been added for Mr. Coward on all necessary pages of the loan documents. Id. ¶ 8. Though not explicitly alleged by plaintiff, the court assumes for the purposes of this motion that Mr. Coward did not sign the loan documents.

In 2007, plaintiff applied for a loan modification, for which she was approved with a new monthly payment amount of $1,579. Compl. ¶ 10. When plaintiff began to make payments on the new monthly amount, however, she was informed that the payment amount was in fact $1,988. Id.

In 2008 and 2009, plaintiff applied to Chase[2] to have her loan re-modified. Compl. ¶ 11. Over the course of a number of months, plaintiff submitted 18 loan modification applications and was repeatedly assured by Chase representatives that she qualified for a loan modification both under Chase guidelines and the Home Affordable Modification Program ("HAMP") guidelines. Id.

On an unspecified date, plaintiff was approved for a trial modification under HAMP with a monthly payment of $2,045, which was higher than the monthly payment following plaintiff's first loan modification. Compl. ¶ 14.

When plaintiff began making the new monthly payments, she received notice from Chase that her application had been denied because she failed to prove that the property was her primary residence. Compl. ¶ 15. Plaintiff claims this reason was pretextual because the

---

[1] See Def.'s Req. for Judicial Notice ("RJN") (ECF No. 52), Ex. B.

[2] On September 25, 2008, Chase entered into a Purchase and Assumption Agreement with the Federal Deposit Insurance Company ("FDIC") after the Office of Thrift Supervision closed WaMu and appointed the FDIC as receiver. RJN, Ex. A.

home had always served as her primary residence.  Id.

In the summer of 2010, plaintiff received foreclosure documents from Chase. Compl. ¶ 9.  At this time, plaintiff discovered that the loan documents had been forged to include her husband's signature.  Id.  Plaintiff accuses WaMu and Chase representatives of forging Mr. Coward's signature to avoid rescission or invalidation of the loan.  Id. ¶ 9.  During this time, plaintiff also informed Chase representatives both verbally and in writing that her husband was, and is, a military service member within the meaning of the Servicemembers Civil Relief Act ("SCRA"), and therefore qualified for assistance under the SCRA.  Id. ¶ 16.  Chase ignored this information and foreclosed on the property at issue in August 2010.  Id.

B.   Procedural History

This action was initially filed pro se in the Sacramento County Superior Court on August 19, 2011 against defendant Chase.  Chase, which was served on November 21, 2011, timely removed this case to this court on December 20, 2011 pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332.

Following plaintiff's retention of counsel and the stipulation of the parties for the filing of an amended complaint, plaintiff filed a first amended complaint on January 25, 2012. The first amended complaint brought claims for fraud in the inducement, rescission, breach of contract, breach of the covenant of good faith and fair dealing, promissory estoppel, fraud and deceit and/or negligent misrepresentation, violation of the SCRA, and violation of the Truth in Lending Act ('TILA"), 15 U.S.C. § 1601 *et seq.*  Chase sought dismissal of the first amended complaint by arguing, inter alia, that plaintiff and her husband filed a Chapter 7 bankruptcy petition on December 17, 2009, but failed to disclose any of her legal claims as assets in the bankruptcy petition.  On April 30, 2012, the Honorable Garland E. Burrell, Jr. granted defendant's motion on the ground that, because plaintiff's claims predated the bankruptcy petition, the claims were therefore an asset of the bankruptcy estate, and, as such, plaintiff lacked standing to assert her claims.  ECF No. 22.

Plaintiff filed a second amended complaint on May 14, 2012 again bringing claims for fraud, rescission, breach of contract, breach of the covenant of good faith and fair dealing, promissory estoppel, fraud and decedent and/or negligent misrepresentation, violation of the SCRA, and violation of TILA.  Chase moved to dismiss the second amended complaint for plaintiff's purported failure to cure the deficiencies noted in the first amended complaint.  Judge Burrell dismissed all but plaintiff's fraud and SCRA claims.  ECF No. 30.

Plaintiff filed a third amended complaint ("TAC") on June 29, 2012 asserting claims for fraud and violation of the SCRA.  ECF No. 36.  On August 13, 2012, plaintiff filed an amended TAC dismissing the SCRA claim and proceeding only as to her fraud claim.  ECF No. 41.  This matter is proceeding on this amended TAC.

On September 11, 2012, plaintiff's counsel filed a motion to withdraw as attorney, which was granted on September 13, 2012 by the Honorable Garland E. Burrell.  This matter is before the undersigned pursuant to Local Rule 302(c)(21).

On October 19, 2012, Chase filed the instant motion to dismiss.  ECF No. 51.  Plaintiff opposes the motion.

## LEGAL STANDARDS

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint.  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Thus, a defendant's Rule 12(b)(6) motion challenges the court's ability to grant any relief on the plaintiff's claims, even if the plaintiff's allegations are true.

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light

4

most favorable to the plaintiff.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989).

The court is permitted to consider material properly submitted as part of the complaint, documents not physically attached to the complaint if their authenticity is not contested and the complaint necessarily relies on them, and matters of public record.  Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).  Matters of public record include pleadings and other papers filed with a court.  Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986).  The court need not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact.  Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

## DISCUSSION

A.  Request for Judicial Notice

    1.  Defendant's Request for Judicial Notice

Defendant asks the court to take judicial notice of documents accompanying its motion to dismiss.  See RJN (ECF No. 52).  These documents include: (1) the Purchase and Assumption ("P&A") Agreement dated September 25, 2008 between the Federal Deposit Insurance Corporation ("FDIC"), acting both in its corporate capacity and as receiver for WaMu, and Chase; (2) a duplicate of a certified copy of the deed of trust ("DOT") securing plaintiff's loan, as recorded on October 26, 2005 in the Sacramento County Recorder's Office; and (3) a certified copy of the grant deed recorded on October 26, 2005 in the Sacramento County Recorder's Office transferring title to plaintiff and her husband of the Subject Property.

Plaintiff objects to this request because she contends that a court cannot consider documents outside of the complaint on a motion to dismiss.  Plaintiff also argues that judicial notice of the DOT is improper because she disputes its authenticity.  As to the first argument, the court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b); United States v.

1 Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993). Facts subject to judicial notice may be
2 considered by a court on a motion to dismiss. In re Russell, 76 F.3d 242, 244 (9th Cir. 1996). In
3 actions arising from mortgage disputes, courts may take judicial notice of the deed of trust and
4 other documents pertaining to the loan. Kelley v. Mortgage Electronic Registration Systems,
5 Inc., 642 F. Supp. 2d 1048, 1052-53 (N.D. Cal. 2009). A court may also take "judicial notice of
6 matters of public record outside the pleadings." Indemnity Corp. v. Weisman, 803 F.2d 500, 504
7 (9th Cir. 1986). The court has examined each of the exhibits for which judicial notice is
8 requested and finds that each of the exhibits is suitable for judicial notice as matters of public
9 record outside of the pleadings. See Fed. R. Evid. 201(b).

10 With respect to plaintiff's position regarding the authenticity of the DOT, this
11 argument fails as well. According to Rule 902(8) of the Federal Rules of Evidence, if a
12 document is "accompanied by a certificate of acknowledgment executed in the manner provided
13 by law by a notary officer," such document is self-authenticating. Here, plaintiff initialed or
14 signed every page of the DOT, signed the final page, and agreed to abide by its terms on October
15 20, 2005 in the presence of a notary. RJN, Ex. B. The DOT therefore satisfies the Rule 902(8)
16 standard and shall be deemed self-authenticating. Judicial notice of Exhibits "A" through "C" of
17 ECF No. 52 will therefore be granted.

18     2.    <u>Plaintiff's Request for Judicial Notice</u>

19 In her opposition to Chase's motion to dismiss, plaintiff also submits documents
20 which she asks the court to judicially notice. ECF No. 62-1. Plaintiff submits the following
21 documents for judicial notice: (1) an affidavit of Mr. Coward with accompanying exhibits, which
22 include the report of a forensic document examiner who opines that the disputed signature on the
23 Deed of Trust is not Mr. Coward's; (2) a declaration of pro se plaintiff William Paatalo in
24 another federal action in Montana, regarding Chase's conduct in his lawsuit; (3) the declaration
25 of William T. Merry, purportedly of the FDIC, regarding the FDIC receivership of Washington
26 Mutual; and (4) the affidavit of Michiko Stehrenberger, an Idaho resident, regarding a telephone

6

conversation with Robert Schoppe of the FDIC regarding the FDIC receivership of Washington Mutual.  None of these materials fall into the limited category of documents that can be judicially noticed under Rule 201.  Accordingly, this request will be denied.

B.     Analysis

Chase presents two grounds for dismissal.  Chase first argues that the court lacks subject matter jurisdiction over plaintiff's fraud claim because the challenged conduct – namely, the forgery of Mr. Coward's signature – precedes Chase's acquisition of WaMu.  Accordingly, the claim must be brought against the FDIC, but because any such claim must proceed with an administrative claim first pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), this claim fails.  Alternatively, Chase seeks dismissal for failure to state a claim.

1.     Subject Matter Jurisdiction

Under FIRREA, courts lack subject matter jurisdiction to hear a claim against a defunct bank taken into receivership by the FDIC unless the plaintiff has complied with an administrative claims process.  McCarthy v. FDIC, 348 F.3d 1075, 1077-78 (9th Cir. 2003); Intercontinental Travel Mktg. v. FDIC, 45 F.3d 1278, 1282 (9th Cir. 1994) ("No court has jurisdiction over the claim until the exhaustion of this administrative process").

The FIRREA, codified in relevant part at 12 U.S.C. § 1821(d) (3)-(10), "provides detailed procedures to allow the FDIC to consider certain claims against the receivership estate 'to ensure that the assets of a failed institution are distributed fairly and promptly among those with valid claims against the institution, and to expeditiously wind up the affairs of failed banks.'" Benson, 673 F.3d at 1211 (9th Cir. 2010) (quoting McCarthy, 348 F.3d at 1079).  This administrative claims process gives rise to FIRREA's jurisdictional bar, which provides:

> (D) Limitation on judicial review
>
> Except as otherwise provided in this subsection, no court shall have jurisdiction over—

7

> (I) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D). "The phrase 'except as otherwise provided in this subsection' refers to a provision that allows jurisdiction after the administrative claims process has been completed." McCarthy, 348 F.3d at 1078 (citations omitted); accord Benson, 673 F.3d 1207, 2012 WL 917579, at *4 ("FIRREA requires that a plaintiff exhaust these administrative remedies with the FDIC before filing certain claims.").

In Benson, the Ninth Circuit Court of Appeals clarified that FIRREA's jurisdictional bar applies to claims against: (1) failed banks; (2) the FDIC, acting as the receiver for a failed bank; and (3) "a purchasing bank when the claim is based on the conduct of the failed institution." Benson, 673 F.3d 1207, 2012 WL 917579, at *6-7. However, the Court of Appeals held that "[c]laims of independent misconduct by an institution that purchases a failed bank are not covered by FIRREA's exhaustion requirement." Id. at *7; see also id. at *8 ("Purchase of a failed bank does not buy an institution immunity to continue in its predecessor's malfeasance.").

Here, the judicially-noticed October 2005 DOT displays signatures by both plaintiff and Mr. Coward, but Chase did not enter into the P&A Agreement to acquire WaMu until September 2008. Thus, any forgery on the DOT occurred well before Chase acquired WaMu. Because plaintiff brings her claim against Chase as a purchasing bank, but the claim is premised on the conduct of WaMu, FIRREA's administrative exhaustion requirement applies. See 12 U.S.C. § 1821(d)(13)(D)(ii). Plaintiff has not alleged that she exhausted her administrative remedies with the FDIC as required by FIRREA and has not opposed the motion on this ground. At hearing on the motion, plaintiff confirmed that she has not filed a claim with the FDIC. Accordingly, this court lacks jurisdiction over plaintiff's claim to the extent that it is

premised on the conduct of WaMu agents or representatives.

Moreover, even if the court did have jurisdiction to hear this claim, Chase asserts that plaintiff may not maintain an action against it for WaMu's conduct pursuant to Section 2.5 of the P&A Agreement.   The court agrees.

> A number of federal courts have now held that [the] P & A Agreement relieves Chase of liability for borrowers' claims against Washington Mutual. These courts reason that Chase became a successor to Washington Mutual by executing the P & A Agreement; the P & A Agreement governs the status of Chase as successor; and Article 2.5 of the P & A Agreement establishes that Chase did not assume liability for borrowers' claims related to loans made by Washington Mutual prior to September 25, 2008. On this basis, the district courts . . . have repeatedly dismissed TILA and RESPA claims brought against Chase because the P & A Agreement specifies that Chase did not assume liability for such claims.

McCann v. Quality Loan Serv. Corp., 729 F. Supp. 2d 1238, 1241-42 (W.D. Wash. 2010) (citing Danilyuk v. JP Morgan Chase Bank, N.A., 2010 WL 2679843 (W.D. Wash. July 2, 2010); Federici v. Monroy, 2010 WL 1345276 (N.D. Cal. Apr. 6, 2010); see also Biggins v. Wells Fargo & Co., 266 F.R.D. 399, 414-15 (N.D. Cal. 2009) (relying on P&A Agreement, court dismissed claims against Chase where plaintiff's theory of liability stemmed from WaMu's conduct). In light of this abundant authority concluding the P&A Agreement absolves defendant from liability for WaMu's pre-seizure conduct, the court agrees that to the extent plaintiff alleges defendant is liable for WaMu's pre-seizure conduct, the P&A Agreement operates to shield defendant from liability

  2. <u>Failure to State a Claim</u>

Alternatively, defendant seeks dismissal for failure to state a claim.  The gravaman of plaintiff's claim is that Chase representatives forged Mr. Coward's signature in the summer of 2010 in order to foreclose on plaintiff's residence.  The judicially-noticed DOT, however, shows that as of October 2005, that document bore the signature and initials of both plaintiff and Mr. Coward.  As defendant correctly points out, a court "need not . . . accept as true

9

allegations that contradict matters properly subject to judicial notice or by exhibit." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), amended on other grounds, 275 F.3d 1187 (9th Cir. 2001) (citation omitted). Here, having examined the October 2005 DOT, which clearly shows a signature purporting to be that of Mr. Coward, the court concludes that, even if plaintiff proves that Mr. Coward's signature was forged, the DOT conclusively establishes that any such forgery necessarily occurred on or before October 2005 and therefore not in the summer of 2010.

Plaintiff appears to concede that the alleged forgery pre-dates Chase's acquisition of WaMu and yet seeks to hold Chase liable under a theory of ratification. In her November 15, 2012 motion to continue hearing, plaintiff sought a continuance of the hearing on Chase's motion to dismiss so that she may conduct discovery "pertaining to (i) the identity of the individual that forged the signature; (ii) whether or not that employee had been *subsequently* hired by [defendant]; (iii) whether or not that employee had been *subsequently* hired by [defendant] with knowledge of the act, thereby ratifying the act . . . ." ECF No. 56-1 at 5 (emphasis added). Additionally, in a November 30, 2012 court filing, plaintiff argues that dismissal of this case would deny her "the ability to discovery the identity of the individual that forged the signature and whether or not that employee had been subsequently hired by [defendant] with knowledge of the act, thereby ratifying the act . . . ." ECF No. 60 at 2.

In her opposition here, plaintiff argues that her fraud claim was previously found by this court to state a claim and therefore defendant may not re-litigate that issue on this motion. In his June 15, 2012 order granting in part defendant's motion to dismiss the second amended complaint, Judge Burrell found only that plaintiff had standing to bring her fraud claim and that the claim was stated with adequate particularity, providing the "who," the "when," and the "what" as required under Federal Rule of Civil Procedure 9. Contrary to plaintiff's understanding of that order, Judge Burrell did not consider the sufficiency of plaintiff's fraud claim in light of records that may be judicially noticed. In this motion, Chase asks the court to

do just that. For the reasons previously stated, the court finds that plaintiff indeed fails to state a claim against Chase. Insofar as plaintiff argues that Mr. Coward could not have signed the DOT before it was recorded with the Sacramento County Recorder's Office, that claim concerns conduct that pre-dates Chase's acquisition of WaMu. Accordingly, plaintiff's TAC must be dismissed.

Plaintiff has asked for leave to amend her complaint should the court grant defendant's motion to dismiss. Under Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved. Courts are not required to grant leave to amend if a complaint lacks merit entirely." Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000). See also, Smith v. Pacific Properties and Development Corp., 358 F.3d 1097, 1106 (9th Cir. 2004), citing Doe v. United States, 58 F.3d 494, 497(9th Cir.1995) ("a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not be cured by the allegation of other facts."). "[A] district court retains its discretion over the terms of a dismissal for failure to state a claim, including whether to make the dismissal with or without leave to amend." Lopez v. Smith, 203 F.3d at 1124. "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." Metzler Inv. GMBH v. Corinthian Colleges, Inc. 540 F.3d 1049, 1072 (9th Cir. 2008), quoting In re Read-Rite Corp., 335 F.3d 843, 845 (9th Cir. 2003). The court cannot discern any basis upon which further leave to amend could be other than futile. Accordingly, this request should be denied.

Based on the foregoing, IT IS HEREBY RECOMMENDED that defendant Chase's October 19, 2012 motion to dismiss be granted and this action be dismissed without leave to amend.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 19, 2013.

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

/mb;cowa3378.mtd